## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **DEBRA D. ANDRIST,** | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. __4:22-cv-2126____ |
| **SAM HOUSTON STATE UNIVERSITY** | § | JURY |
| and **ALISA WHITE,** in her official | § | |
| capacity as its president, | § | |
| *Defendants* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Debra D. Andrist *("Dr. Andrist")* was the founding chair of the foreign languages department and a tenured faculty member teaching Spanish at Sam Houston State University (SHSU). When the COVID pandemic hit, the SHSU administration nonetheless treated her like an annoyance rather than a valued long-time faculty member.

Her stellar SHSU career could have survived notwithstanding a record of serious asthma, had the university reasonably accommodated her simply by letting her do what she successfully did for it multiple times pre-pandemic: teach online. SHSU brags of its online course offerings and how they offer instruction equal in quality to in-person classes.

Plaintiff's department chair approved her teaching online. But higher administration disregarded its legal obligations and terminated her pretextually, resurrecting a statement of planned retirement she earlier withdrew with HR approval. Disregarding her objections to SHSU's non-compliance, the university even refused her the grievance rights usually given tenured faculty, falsely claiming she left voluntarily.

She sues under the federal Rehabilitation Act § 504, alternatively for reinstatement under *Ex Parte Young,* and—if there is a remand —for relief under the Texas Labor Code.

## II. JURISDICTION AND VENUE[1]

1. This Court has jurisdiction for reasons such as that the litigation:

    1.1. involves federal questions (28 U.S.C. § 1331), arising under laws such as Section 504 of the Rehabilitation Act (29 U.S.C. § 794); and

    1.2. seeks relief from a deprivation of equal rights (28 U.S.C. § 1343).

2. Venue is proper in this court pursuant to 28 U.S.C. § 1391 as the Southern District of Texas is where Defendants reside and where a substantial part of the events or omissions giving rise to the claim occurred.

3. Per 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the claims raised under Texas law, as they are so factually related to the federal claims for which there is original jurisdiction that they form part of the same case or controversy.

4. Sovereign immunity is inapplicable to Plaintiff's claims for reasons such as:

    4.1. For the Rehabilitation Act § 504 (29 U.S.C. § 794) claim against SHSU—asserting violation of the prohibition on disability discrimination in federally funded programs—the university knowingly and voluntarily waived 11th Amendment immunity by its acceptance of federal funding.[2]

---

[1] Except where specifically identified to the contrary, assertions in this pleading are made in addition and in the alternative to each other and apply to all causes of action. Based on pre-discovery information, today's assertions are subject to later correction and clarification.

[2] *See* 42 U.S.C. § 2000d-7 (notice to states of abrogation of immunity from federal anti-discrimination laws as a condition of receiving federal funds). *See also, e.g.,* www2.ed.gov/about/offices/list/ocr/docs/investigations/more/06162255-b.pdf (U.S. Department of Education/SHSU "Resolution Agreement" acknowledging application of Rehabilitation Act to the university's operations) *and* SHSU Summary of Annual Report FY2019 (listing multiple U.S. Department of Education grants received by SHSU) (both sites viewed 6/23/2022).

4.2.   For all other federal claims, Plaintiff raises only *Ex Parte Young* claims against Defendant Alisa White, solely in her official capacity, and only for prospective relief such as Plaintiff's reinstatement and an order that President White cease violation of federal disability laws.

4.3.   For the state law claims—such as under §21.051 of the TEXAS LABOR CODE—these are raised only in the alternative to the federal claims and only in the event this suit is remanded to state court.[3]

### III. ADMINISTRATIVE EXHAUSTION OF REMEDIES

5.   Plaintiff complied fully with any administrative exhaustion requirements. For example:

5.1.   She timely cross-filed a November 27, 2020 charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission (TWC), asserting disability discrimination, retaliation, and a failure of "interactive dialogue and denial of reasonable accommodation."

5.2.   As at today's Ex. A, EEOC issued a Notice of Right to Sue on April 8, 2022 (i.e., within the last 90 days).

5.3.   As at today's Ex. B, TWC issued a June 11, 2022 notice of right to file a civil action, based on the same charge of discrimination.

### IV. PARTIES AND SERVICE

6.   Plaintiff Debra D. Andrist, Ph.D., is an individual residing in Montgomery County, Texas, within the Houston Division of the Southern District of Texas federal courts.

7.   Defendant Sam Houston State University is an agency of State of Texas, located in Huntsville, Texas (Walker County), also within the Houston Division.

---

[3] *See* TX LAB. CODE § 21.002(8)(D) (defining "Employer" to include state agencies).

8.      Defendant Alisa White is sued in her official capacity as president of SHSU.[4]

9.      These Defendants are being served:

    9.1.    Per FED. R. CIV. P. 4(j)(2), by way of the Chief Executive Officer of the entity: President Alisa White/Sam Houston State University/Bobby K. Marks Administration Building/1806 Ave J, Suite 303/Huntsville, Texas 77340.

    9.2.    Per TX CIV. PRAC. & REM. CODE § 104.005, by way of the Texas Attorney General: The Hon. Ken Paxton/Office of the Attorney General/PO Box 12548/Austin, TX 78711-2548.

    9.3.    With copy to the Texas Secretary of State/Service of Process/PO Box 12079/Austin, TX 78711-2079.

    9.4.    With courtesy copy to the attorney who was the point of contact for SHSU during the events at issue:  Sandra S. Horne sandra.horne@tsus.edu.

## V. FACTUAL CONTEXT (applicable to all legal claims)

### A. Sam Houston State University

10.     Defendant Sam Houston State University is an agency of the State of Texas.

11.     It is headquartered in Huntsville and has more 20,000 students.

12.     SHSU is a recipient of federal funds, is a federal contractor, or both.

    12.1.   For example, for the fiscal year ending August 31, 2021, the total federal expenditures for SHSU are reported to have been over $185 million. *See* https://fmx.cpa.texas.gov/fm/pubs/fed_sched/2021/?agy=753 (viewed 6/23/2022).

13.     The university identifies itself as a leader in providing online instruction.

---

[4] The Rehabilitation Act claims are raised against President White only to the extent the Defendants may assert that she rather than the university is the proper defendant under that law.

13.1.    For example, as recently as of June 13, 2022, SHSU represented (www.shsu.edu/about/facts.html) that it was:

13.1.1.    "Ranked No. 1 by Study.com for Best Online Colleges & Schools in Texas";

13.1.2.    "Named among the 'Best Online Colleges for Veterans and Their Families in 2018'"; and

13.1.3.    ranked as the "'Best College for Master's Degree Programs Online for 2018' (Editor's Choice)."

13.2.    The university explained in a July 15, 2019 press release that:

13.2.1.    It was an "early adopter of distance learning," allowing it to be "at the forefront of merging proven online teaching practices with technology advancements."

13.2.2.    "Today, over 11,400 students are taking at least one online course at Sam Houston State, with a quarter of semester hours generated online."

13.2.3.    "SHSU Online, in partnership with our faculty, goes to great lengths to ensure the online classroom mirrors the educational experience found on campus."

13.2.4.    (Quoting OnlineColleges.com), "SHSU students in online degree programs have all the benefits of college services that other students receive, such as career services, student success initiatives, mentoring, a writing center and more."

*See* https://www.shsu.edu/today@sam/T@S/article/2019/no-1-online (viewed 6/25/2022).

13.3.   SHSU advertises to prospective students that they can "Get the Same Great Education Online" because there "is no difference between degrees earned through online course delivery and degrees earned through traditional classroom courses." *See* https://online.shsu.edu/why-shsu-online/ (viewed 6/25/2022).

14.   Among the online degrees SHSU offers is a Bachelor of Arts in Spanish. *See* https://online.shsu.edu/degrees/undergraduate/spanish/ (viewed 6/25/2022).

15.   The University also has offered a Master's in Spanish fully online at times and at other points with extensive online offerings.

16.   In short, having professors teach online classes does not pose an unreasonable burden for SHSU; rather the university treats it as a competitive advantage in seeking students.

17.   On average, the university nets more revenue per 100% online student than it does for students receiving instruction in-person.

17.1.   For such reasons, SHSU offers new students enrolled in a 100% online program a one-time $1,000 scholarship.

*B. Defendant Alisa White*

18.   Defendant White began serving as president of the university in August 2020.

19.   She is named as a Defendant in this suit as to her actions in her official capacity and as to any official actions of her predecessor in the office of SHSU President, Dana Hoyt.

20.   Plaintiff seeks prospective relief against her for violation of federal law (and not state law).

21.   Defendant White's refusal to reinstate Plaintiff is an ongoing violation that continues to harm Plaintiff, such as by causing Plaintiff a continued loss of income.

21.1.   Among the ongoing aspects of Defendant White's federal violations are the continued discrimination against and exclusion of Plaintiff from service as a faculty member at this federally funded university.

21.2.   These actions will not be abated short of an injunction's being imposed.

22.   The president is familiar with the university's extensive online offerings.

23.   In one or more prior jobs, the president has taught courses online. See shsu.edu/dept/faculty-senate/minutes/faculty_senate_minutes_09032020.pdf at 3 (viewed 6/25/2022).

24.   As president of the university, she is the individual responsible for decisions about who will be allowed to teach and under what conditions.

25.   The university's decisions and actions toward Plaintiff were made by President White, by persons (e.g., a dean or provost) authorized to act as her agents, or a combination of them.

26.   As president of the university, Dr. White has a duty to ensure that the university complies with federal laws, such as Section 504 of the Rehabilitation Act, and similar state laws.

26.1.   Declaratory and/or injunctive relief against President White thus would provide relief to the harm suffered by Plaintiff.

26.2.   In contrast, if Plaintiff were to name a lower-level administrator as the *Ex Parte Young* defendant, that person's actions presumably could nonetheless be overruled by the university's president.

26.3.   Consistent with TEX. EDUC. CODE § 103.06, President White is responsible for the general management of the university and serves as its executive officer.

*C. Plaintiff Debra Andrist*

27. At the time of the events giving rise to this suit, Dr. Andrist had a more than 40-year career in education.

28. In 2020, she was serving as a tenured professor of Spanish in the Department of World Languages and Cultures at SHSU's Huntsville campus.

29. She earlier was the founding chair of SHSU's foreign languages department.

30. Her experience prior to her 14 years on the SHSU faculty included more than ten years of teaching at University of St. Thomas (Houston) and some fourteen years at Baylor University (Waco).

31. Dr. Andrist has a history of successfully teaching courses online for SHSU.

    31.1. For example, prior to the COVID pandemic, Dr. Andrist successfully taught multiple SHSU courses partially or fully online.

        31.1.1. Among those fully online were: 2312 Intermediate Spanish II for Medical & Health Professions; 4374 Spanish for Health Professions; and 4375 Latin American Current Events.

        31.1.2. Among those partially online were: 2312 Intermediate Spanish II; 3361 Grammar & Composition; 4370 & 5331 Medical Spanish—The Body, Illness, Injury, Treatment & Death in Hispanic Art & Literature; 5332 Golden Age; and 5336 Hispanic Women's Studies.

32. Given her skill, experience, education, and record of successfully performing the essential functions of a faculty member, Dr. Andrist was a qualified individual as to her SHSU job.

    32.1. This was especially true to the extent she would be granted a needed reasonable accommodation.

33.    She is an individual that may be considered "handicapped" or "disabled" under federal and state disability law.

    33.1.    For example, she has a record of suffering asthma dating back to childhood, which—when not in remission and mitigated—substantially limits her in the major life activity of breathing.

    33.2.    Asthma is a physiological condition affecting the respiratory and pulmonary systems.

34.    Persons with asthma and other respiratory issues, at least when having additional risk factors like Dr. Andrist had (over age 65 and high BMI), are at higher risk from hospitalization from COVID-19 than others, particularly when not granted reasonable accommodations that reduce such risks.

### D. The COVID-19 Pandemic and Requests for Reasonable Accommodation

35.    As with many higher education institutions, COVID had a profound impact on SHSU.

36.    In March 2020, the university shut down on-campus instruction in response to the pandemic.

37.    Around June 25, 2020, Dr. Andrist notified SHSU reasonable accommodation point of contact Patricia Zavala that she sought permission to teach entirely online for the upcoming semester.

    37.1.    Dr. Andrist noted she had a history of respiratory issues since childhood, such as serious environmental allergies, "episodes of anaphylaxis," ongoing treatments such as a CPAP regimen, and "severe allergy eczema."

    37.2.    She expressed concern she was at imminent risk of developing "life-threatening COVID-19" if teaching in person, even with masking.

37.3.  She referenced her age at the time (69) as a further risk factor.

37.4.  She cited her experience in teaching courses successfully online for the university.

38.  Around June 27, 2020, Dr. Andrist submitted a telecommuting proposal form request to teach the fall semester's classes online, additionally identifying it as a reasonable accommodation request.

39.  Around June 29, 2020, taking into account his "knowledge of her personal health circumstances," Department Chair Leif French approved the telecommuting arrangement, while directing her to HR for final approval.

40.  Around July 6, 2020, Dr. Andrist's physician returned a university form with answers to six questions.

40.1.  The doctor identified a diagnosis of asthma, said the condition was permanent, and recommended accommodation as "the patient's age & underlying asthma" put her at "very high risk of complications from COVID-19."

40.2.  The doctor explained that teaching "remotely will allow [Dr. Andrist] to remain isolated from exposure to the virus in a densely populated environment such as a college campus."

40.3.  In response to the question of whether the condition substantially limits a major life activity, the doctor answered "No."

40.3.1.  This appears to have been based on a misunderstanding of the law and/or the form by relying on the condition solely in the present state of being mitigated and in remission, not applying current federal law.

41.  The university's policy on disabled employees—consistent with the Americans with Disabilities Act—defines "an individual with a disability" as including a person with "a

record of" a physical or mental impairment that substantially limits one or more life activities.   *See   www.shsu.edu/intranet/policies/finop/human_resources/documents/ER-5.pdf* .

    41.1.   Though the policy was adopted December 19, 2011, it makes no reference to the 2008 amendments to the ADA nor to whether mitigating measures and degree of remission are to be considered in evaluating what is substantially limiting.

42.    The doctor appeared to be unaware, and the university-provided form does not explain, that the Americans with Disabilities Act Amendments Act of 2008 (ADAAA) expanded the definition of substantially limiting a major life activity.

    42.1.   For example, it includes conditions affecting the operation of the respiratory system.

    42.2.   It continued from the original ADA to cover persons having a record of such a substantially limiting condition.

    42.3.   Significantly, the current law also specifies that determination of "substantially limiting" is to be made without regard to mitigating measures and to take into account the severity of a condition when it is not in remission.

43.    Employees' doctors are not expected by federal law to be experts in the details of disability law.

44.    As a state institution and recipient of federal funds, and knowing itself to be subject to state and federal prohibitions against disability discrimination, the university was aware at least as of January 1, 2020 that the definition of disabled persons that applied to its staff:

    44.1.   included those with a record of a substantially limiting condition,

    44.2.   included conditions affecting the operation of the respiratory system, and that

44.3.   the substantiality of such a limitation was to be determined without regard to mitigating measures and was to take into account the severity of a condition when it is not in remission.

45.   The Defendants were made aware of such requirements by Plaintiff and her attorney prior to their decision (as below) to force her into an involuntary and premature retirement.

46.   As reflected by this awareness, and facts such as the post-termination denial of the appeal process ordinarily granted a tenured faculty member and the denial of emeritus status to Plaintiff, Defendants' discrimination and reprisal against Plaintiff Andrist were intentional.

47.   Around July 13, 2020, Ms. Zavala informed Dr. Andrist by email that the request for reasonable accommodation was denied based "on the doctor's note" as "the condition does not limit a major life activity."

48.   Around July 16, 2020, in an email to Ms. Zavala, with copy to the department chair, Dr. Andrist asked for details about how "my substantial impairment of breathing due to asthma/allergy does not fit" the EEOC and ADA definitions to qualify.

49.   Between receipt of that message and at least August 3, 2020, Ms. Zavala did not provide the requested information nor otherwise respond to Dr. Andrist.

49.1.   This was a failure to engage in a required interactive dialogue with Dr. Andrist.

50.   In July 2020, Provost Richard Eglsaer told SHSU faculty that students had paid tuition for in-person instruction so entirely remote instruction was not an option for them.

51.   Around August 3, 2020, Dr. Andrist considered the lack of response from Ms. Zavala and the fact the university had ruled out dealing with COVID risks to faculty via entirely remote instruction.

52.     Around August 3, 2020, though otherwise fully prepared to teach courses in the fall, Dr. Andrist saw no option but to give notice that "I will officially retire as of Aug. 31, 2020."

53.     The university had indicated 100% online teaching would be allowed only if a faculty member's physician stated the person was "physically unable to teach."

    53.1.   This set a higher standard than that required by the Rehabilitation Act/ADAAA.

    53.2.   Apparently zero faculty members were deemed to meet this standard for such an accommodation.

54.     Dr. Andrist would not have given this initial notice of her planned retirement but for the non-accommodation.

55.     In August, Dr. Alisa White became the new president of the university.

56.     President White indicated—such as to the faculty senate—that the administration would show some flexibility in accommodating faculty COVID issues.

57.     This gave Plaintiff hope that she would not have to give up her SHSU career after all.

58.     Around August 13, 2020—after confirming with HR that she was able to rescind her advance notice of retirement—Dr. Andrist notified her department chair that she was doing so.

    58.1.   Such a communication with HR was in a phone call near 5:03 p.m. around August 13, 2020 between Plaintiff and staff member Cindy Balusek.

59.     Plaintiff explained this was based on the new university president's announcing (such as below) there would be flexibility as to faculty requests to teach remotely for health reasons.

60.     In August 2020, President White had communicated to the faculty that she "asked HR and supervisors to be more flexible in granting accommodations to faculty who are at high risk or are primary caregivers for household family members at high risk."

60.1.   She also directed that accommodation requests should be made through department chairs to deans, who in turn would work with HR to make a final determination.

60.2.   This is the procedure that Plaintiff had attempted for a reasonable accommodation.

61.   Around August 14, 2020, Plaintiff followed up her retirement-cancellation notice to the department chair with an email to six staff members, formally rescinding her retirement.

62.   She next notified the Employee Retirement System and Medicare to stop their processing of what would have been a retirement at the end of August 2020.

63.   Plaintiff's announcement of her planned retirement as of the end of August 2020 thus was void and of no valid effect as of her mid-August withdrawal of it.

64.   As of August 14, 2020, more than 160,000 Americans were believed to have died from COVID-19. *See* www.covidtracking.com/data/national/deaths (viewed 6/23/2022).

65.   Around August 21, 2020, Plaintiff's attorney sent a letter to SHSU attorney Sandra Horne formally requesting reasonable accommodation for Plaintiff. The letter noted:

65.1.   The university eventually went 100% online the prior semester.

65.2.   Plaintiff's doctor recommended reasonable accommodation via remote teaching.

65.3.   Ms. Zavala, the reasonable accommodation official point of contact, rejected the request on behalf of the university.

65.4.   Ms. Zavala's views (and possibly those of Plaintiff's doctor) of "substantially limited" appear based on an outdated view of disability law (predating 2008).

66.   The attorney letter also outlined the applicable law and how Dr. Andrist was asserted to meet the definition for a substantially limiting medical condition that qualifies as a disability, such that reasonable accommodation by the university would be appropriate.

67.   Around August 26, 2020, agency counsel asserted by email that the university needed to know how the medical condition impacted Dr. Andrist's ability to teach face to face and to what degree and to know how long she would need an accommodation.

68.   The university knew or should have known by this point that the remote teaching request was for the current (fall) semester and that it was not known how long the accommodation would be needed, as no one knew how quickly the pandemic would abate.

69.   In a phone call around August 28, 2020 between the attorneys for Plaintiff and the university, the university indicated it would stop paying Dr. Andrist if she did not show up in person for classes starting September 1.

70.   Around August 31, 2020, the university notified Plaintiff via phone—by way of its attorney to her attorney—that the university was going to treat Dr. Andrist as retiring effective this same date.

   70.1.   This was notwithstanding that Plaintiff weeks ago had rescinded—consistent with HR's having told her she could do so—her advance notice of planning to retire.

   70.2.   Contrary to the university's excuse, Plaintiff was fired; she did not retire.

71.   Plaintiff's attorney also notified the university's lawyer that, consistent with Plaintiff's intent to remain employed, she took an August 24 "Blackboard Ally" class and scheduled the week of August 31 taking a "Kaltura and Blackboard Ate My Homework" class.

72.   The university declined Plaintiff's request for written confirmation that it was refusing to accept the withdrawn advance notice of resignation.

73.   As tenured faculty are granted a due process hearing if being terminated, Plaintiff requested to utilize that process to address being forcibly retired.

74.   The university speciously responded that because she resigned, no such process applied.

74.1.   The refusal of the university to allow Plaintiff to use an appeals process that applied to terminated faculty members with tenure was pretextual in that no voluntary resignation had occurred when she was fired effective around August 31, 2020.

74.2.   The refusal of the university to allow Plaintiff to use an appeals process that applied to terminated faculty members with tenure reflected the school's ill will toward her for having objected to the failure to grant her a reasonable accommodation.

75.   Plaintiff's requests for reasonable accommodation were protected EEO activity under federal law.

76.   Plaintiff's objections to the university's failures to grant her a reasonable accommodation were protected EEO activity under federal and Texas law.

77.   At a September 3, 2020 meeting of the faculty senate, President White answered a question about whether there would be a switch to remote teaching if a faculty member died from COVID in part by saying not necessarily, as the university loses faculty every year. *See* shsu.edu/dept/faculty-senate/minutes/faculty_senate_minutes_09032020.pdf.

78.   The university's resentment of Dr. Andrist's protected EEO activity was further reflected in its failure to grant her "emeritus" status when professors who had not served as founding chair of a department and who had had fewer other academic accomplishments (e.g., publications, presentations) but who had not engaged in such EEO activity—nonetheless were granted such status after their retirement.

79.   The university's actions were in disregard of federal law, such as the 2008 ADAAA direction that the focus should not center on whether the employee is or is not truly disabled and instead on what is a workable accommodation. SHSU's attention was on the former.

80.     The fact that it appears zero other faculty members were accommodated with full online teaching suggests that there was nothing Dr. Andrist could have done that would have resulted in a different outcome.

81.     The university at no point established that allowing Dr. Andrist to teach entirely online would have posed an undue burden on its operations.

    81.1.    Instead, it justified its actions on her purportedly failing to qualify as disabled.

82.     In weighing what might pose an undue burden on the university, consider that during the events at issue, the university had a budget in excess of $350 million.

    82.1.    At the time the university chose not to accommodate her, it had around 12 or more full- and part-time employees available to teach Spanish courses.

83.     Plaintiff timely cross-filed a charge of discrimination with the U.S. EEOC and the Texas Workforce Commission.

84.     In summary of relevant facts:

    84.1.    Dr. Andrist requested a reasonable accommodation of teaching her classes remotely, as she has taught them on previous occasions.

    84.2.    Her department chair agreed it was workable.

    84.3.    Her doctor agreed it was necessary.

    84.4.    HR mistakenly concluded her condition was not a substantially limiting one, apparently based on an outdated understanding of disability law (even after notice to its legal counsel that its approach was antiquated).

    84.5.    Dr. Andrist sought to continue the interactive dialogue with HR about its decision, but HR did not respond.

84.6.   Based on HR's non-responsiveness and the university's stance against accommodating her through online teaching, Dr. Andrist gave notice in early August that she was retiring effective the last day of August 2020.

84.7.   When the new university president indicated more flexibility would be shown, and after confirming with HR that doing so was possible, Dr. Andrist withdrew her planned retirement.

84.8.   The university refused to acknowledge the cancellation of her advance notice of retirement, effectively firing her.

84.9.   Following Plaintiff's objections to the university's non-accommodation, the university even denied her the appeals process to which any other faculty member with tenure who was fired would have been granted.

### E. Examples of Harm Suffered

85.   Setting aside for the moment the question of what the law will or will not allow her to recover, as a result of the discriminatory failure to reasonably accommodate her, the university's decision to force her into retirement, its refusal to grant her the opportunity for an appeal otherwise granted to tenured faculty, or some combination of those, Dr. Andrist suffered harms among which were the following:

85.1.   Loss of income beginning with the 2020 fall semester, continuing to the present, and—unless she is reinstated—expected to continue in the future.

85.2.   Loss of retirement income, due to being forced prematurely out of her job and the associated reduction in retirement plan contributions.

85.3.   Damage to her professional reputation, such as from being fired and being denied emeritus status that others similarly situated but without EEO history were granted.

85.4.   Loss of decades of research, notes, awards, and similar materials when the contents of her office were disposed of prematurely.

85.4.1.   This also reduced opportunities for future research and writing of academic publications—a key measurement of professional accomplishment in the academic world.

85.5.   Emotional distress, inconvenience, profound humiliation, loss of enjoyment of life, and other pain and suffering.

85.6.   Having to incur attorney fees, expenses, and court costs to protect her rights.

86.   Restoring her to as good a position as she would be in had she not suffered retaliation for protected EEO activity and discrimination also would involve—if not granted reinstatement—a chance to proceed with the appeals process granted other tenured faculty.

## VI. LEGAL CLAIMS

### A. *Federal Law*

87.   Section 504 of the Rehabilitation Act (29 U.S.C. § 794 *et seq.*) prohibits any program or activity receiving federal financial assistance from discriminating against an otherwise qualified individual by reason of that person's disability.

87.1.   It additionally bars excluding such persons from participation in or the benefits of such programs or activities.

87.2.   "Program or activity" is defined as including a college or university and other instrumentalities of a state government, as well as state entities that distribute federal funds.

87.3.    Among remedies under the Act are back pay, injunctive relief, and attorney fees.[5]

87.4.    Consistent with the factual context above, Plaintiff was employed in a program or activity receiving federal financial assistance and/or distributing federal funds.

87.5.    She was qualified to serve as a faculty member, as confirmed by her prior years of successful teaching of online and in-person courses for the university.

87.6.    She is a person classified as disabled based on her record of having asthma that, when not mitigated and in remission, substantially limits the major life activity of breathing.

    87.6.1.    The condition also is covered as physiological condition adversely affecting the respiratory and/or pulmonary bodily systems.

87.7.    She was discriminated against and excluded from the benefits of and participation in the university's programs and activities when she was forcibly subjected to a premature retirement after the university failed to grant her a reasonable accommodation of teaching online for the 2020 fall semester.

87.8.    She was discriminated against and excluded from the benefits of and participation in the university's programs and activities when she was denied the opportunity to use the appeals process that other tenured faculty use to challenge a termination.

87.9.    Granting a reasonable accommodation would not have posed an undue burden on the university given its size, budget, and self-proclaimed ability to provide online instruction that is equivalent in quality to that offered students in person.

---

[5] In light of a recent Supreme Court decision, Plaintiff does not seek an award against Defendants under any federal cause of action for emotional distress. As SHSU is a state entity, nor does she seek an award of punitive damages.

87.10.  Granting such an accommodation would have adequately addressed the dangers posed by her disability, which were heightened due to COVID and her age and BMI.

87.11.  The absence of an undue burden was further demonstrated by the fact that Plaintiff's department chair approved her proposal for full-time online teaching.

87.12.  The failure to grant a reasonable accommodation caused Plaintiff to lose pay and suffer other harms, many of which are ongoing in their nature.

87.13.  Nor would it have posed an undue burden to let her use the tenure appeals process.

87.14.  Additionally and in the alternative, the premature extinction of Plaintiff's career with the university was because of her protected EEO activity—such as requesting a reasonable accommodation, objecting to the non-accommodation, or both.

87.15.  In light of the violations of the Rehabilitation Act, Plaintiff seeks relief among which is back pay, front pay (in the absence of reinstatement), special damages and lost opportunities and harm to her professional reputation, as well as pre- and post-judgment interest, cost of court, plus attorney fees and expenses.

87.16.  Plaintiff also seeks a declaration that one or more defendants violated the Act as to Plaintiff and an injunction prohibiting such violations going forward.

88.  Under *Ex Parte Young* jurisprudence, a responsible state official (standing in the shoes of the state) may be subject to declaratory and injunctive relief that is prospective in nature, as well as made to pay claimant's associated attorney fees.

88.1.  As the chief executive officer of the university and the person who made the decision to fail to reasonably accommodate Plaintiff, to terminate Plaintiff, and to deny her use of the tenure appeals process (and/or under whose delegated authority

such decisions were made), President White is the appropriate defendant for this claim.

88.2.   The failure to reasonably accommodate Plaintiff and to forcibly terminate her SHSU career, and continued refusal to reinstate her and even to allow her use of the tenure appeals process, constitute an ongoing violation of one or more of Section 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act (as amended), Title I of the same ADA, and/or implementing regulations.[6]

88.3.   As confirmed by the factual context set out earlier, Plaintiff has a valid *Ex Parte Young* claim against Defendant White in that the suit is brought against White in her official capacity, seeks prospective relief to redress ongoing conduct, and alleges one or more violations of federal law.

88.4.   Plaintiff seeks relief under this claim such as a declaration that Defendant White's actions violated federal law; an injunction prohibiting Defendant White from continuing to engage in such violations; an order that Plaintiff immediately be reinstated to her tenured position on the SHSU faculty (or at minimum be allowed to proceed with appeal of termination of her tenured position); and an award of attorney fees, expenses, and costs of court.

89.   Plaintiff further requests that the Court retain jurisdiction of this case for at least 12 months to ensure the university's future compliance with applicable law and the injunction and that one or more of the defendants be required to file regular compliance reports with the Court.

---

[6] Title II of the ADA includes a requirement that state government give people with disabilities equal opportunity to benefit from their programs, services, and activities. Title I requires employers with 15 or more employees (such as the university) to provide equal employment opportunities to the disabled. Absent an intervening change in the law, Plaintiff is not contending she may seek relief under Title I or II outside of the *Ex Parte Young* framework.

*B.   Texas Law*

90.     The following relief is sought solely in the event this case is remanded to state court, e.g., as a result of the federal claims' being dismissed.

91.     Chapter 21 of the TEXAS LABOR CODE (generally applying standards consistent with parallel federal law such as the ADAAA) prohibits employers—among which are state instrumentalities—from discriminating on grounds among which are disability.

   91.1.   Plaintiff asserts that the failure to reasonably accommodate her, the involuntary termination of her employment, denial of the ability to use the standard appeal process for tenured faculty, or some combination of them, constituted one or more violations of the Texas Labor Code, for which she is entitled to relief such as an award of back pay; pre- and post-judgment interest; front pay or reinstatement; compensatory damages (among which would be those for damage to reputation, for humiliation and embarrassment, for other emotional distress, for lost opportunities); `attorney's fees, expenses, and court costs; and

      91.1.1.   if not granted reinstatement, at minimum an order to be allowed to proceed with the tenure appeals process and for any favorable decision resulting from it to be retroactive.

   91.2.   Plaintiff also is entitled to a declaration that one or both Defendants violated state law as to her and an injunction prohibiting future violations of Texas disability/retaliation law as to her and others similarly situated.

   91.3.   The termination of her is raised both as motivated by disability discrimination (e.g., non-accommodation) and additionally/alternative as because of her protected EEO activity of objecting to the university's refusal to reasonably accommodate her.

91.4.  The refusal to allow her to use the appeals process is likewise raised as disability discrimination and reprisal, as other tenured faculty who were terminated—but who are not disabled and/or did not engage in protected EEO activity—are allowed to use it.

91.5.  Among provisions of TX LAB. CODE violated were:

91.5.1.  Section 21.051, which makes it illegal for an employer to discharge or otherwise discriminate against an individual as to compensation, terms, conditions, or privileges of employment, when such an action is based on the individual's disability.

91.5.2.  § 21.055, which makes it illegal for an employer to retaliate or discriminate against an individual who opposes a practice that is classified as discriminatory under this Chapter 21 of the Code.

91.5.3.  § 21.128, which makes it illegal to refuse to grant a reasonable accommodation to an otherwise qualified individual with a disability absent an employer showing of an undue hardship.

92.  In the event of a remand to Texas court, Plaintiff also seeks declaratory relief and an injunction ordering her reinstatement that is based on a finding of a violation of TX HUM. RES. §§ 121.003(f) along with an award of related attorney fees.

92.1.  This provision declares state policy to be to employ individuals with disabilities on the same terms and conditions as the non-disabled absent a state showing of the absence of an available reasonable accommodation that would allow the essential functions of the job to be performed.

## VII. JURY DEMAND

93.     Plaintiff requests a trial by jury.

## PRAYER

FOR SUCH REASONS, Plaintiff requests that the Court enter judgment against the Defendants, provide relief such as that requested above, additionally granting her such other and further relief in law and equity to which she may be entitled, and denying Defendants any relief of their own.

Respectfully Submitted,

SCHLEICHER LAW FIRM, PLLC

By:  /s/ David R. Schleicher_____
        David R. Schleicher
        SDTX No. 38077
        TX Bar 17753780
        david@gov.law

      510 Austin Ave., Ste. 110
      Waco, Texas 76701
      (254) 776-3939x1
      (254) 776-4001 fax

ATTORNEYS FOR PLAINTIFF ANDRIST

EEOC Form 161-B (01/2022)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Dr. Debra Andrist PhD**<br>**17 Sarasota Circle North**<br>**Montgomery, TX 77356** | From: **Houston District Office**<br>**1919 Smith Street, 6th Floor**<br>**Houston, TX 77002** |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **450-2021-01157** | **DeAnna Brooks-Torres,**<br>**Investigator** | **346-327-7727** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

More than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By:Rayford O. Irvin
04/08/2022

Enclosures(s)

**Rayford O. Irvin**
**District Director**

cc:   **Cynthia Bennett**
**SAM HOUSTON STATE UNIVERSITY**
hrd_cab@shsu.edu

**Virginia Yount**
**Texas State University System**
virginia.yount@tsus.edu

**Sandra S Horne**
**The Texas State University System**
sandra.horne@tsus.edu

**David R Schleicher**
**SCHLEICHER LAW FIRM PLLC**
david@gov.law

**EXH. A**

# Texas Workforce Commission

A Member of Texas Workforce Solutions

Bryan Daniel, Chairman
Commissioner Representing
the Public

Julian Alvarez
Commissioner Representing
Labor

Aaron Demerson
Commissioner Representing
Employers

Edward Serna
Executive Director

June 11, 2022

## NOTICE OF COMPLAINANT'S RIGHT TO FILE CIVIL ACTION

Debra Andrist
c/o David Schleicher
Schleicher Law Firm PLLC
1227 N. Valley Mills Drive, Suite 208
Waco, TX  76710

Re:     ***Debra Andrist v. Sam Houston State University (a state agency) and its Board of Regents***
        EEOC Complaint # 450-2021-01157

Dear Debra Andrist:

The above-referenced case was processed by the United States Equal Employment Opportunity Commission or a local agency. Pursuant to Sections 21.252 and 21.254 of the Texas Labor Code, this notice is to advise you of your right to bring a private civil action in state court in the above-referenced case. YOU HAVE SIXTY (60) DAYS FROM THE RECEIPT OF THIS NOTICE TO FILE THIS CIVIL ACTION.

If your case has been successfully resolved by the U. S. Equal Employment Opportunity Commission or another agency through a voluntary settlement or conciliation agreement, you may be prohibited by the terms of such an agreement from filing a private civil action in state court pursuant to the Texas Commission on Human Rights Act, as amended.

The United States Supreme Court has held in *Kremer v. Chemical Construction Corporation*, 456 U.S. 461 (1982), that a federal district court must generally dismiss a Title VII action involving the same parties and raising the same issues as those raised in a prior state court action under Chapter 21 of the Texas Labor Code. Therefore, filing a lawsuit in state court based on the issuance of this notice of right to file a civil action may prevent you from filing a lawsuit in federal court based on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e - et seq.

Sincerely,

Bryan D. Snoddy
Director, Civil Rights Division

Via email: hrd_cab@shsu.edu
Sam Houston State University (a state agency) and its Board of Regents
c/o: Cynthia Bennett
Box 2026
Huntsville, TX 77341

101 E. 15th Street, Guadalupe CRD • Austin, Texas 78778-0001 • (512) 463-2642 (T) • (512) 463-2643 (F) • Relay Texas: 800-735-2989 (TDD) 800-735-2988 (Voice) • www.texasworkforce.org
Equal Opportunity Employer / Program



**EXH. B**